UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**FREDERICK HALL,** *et al.***,**

    **Plaintiffs,**

  v.

**JOHN D. CULLINAN,** *et al.***,**

    **Defendants.**

Case No. 1:20-cv-918
JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

In this patent infringement action, Plaintiffs Alien Technologies Corp. and Norge Holdings LLC (collectively Alien Technologies)[1] move to compel answers to certain requests for admission (RFAs). (Mot., Doc. 61). In particular, Alien Technologies asked Defendant Lynx Precision Products Corporation[2] to admit that certain claim elements from the asserted patent claim—Claim 1 of U.S. Patent No.

---

[1] The original Complaint listed Frederick Hall and Alien Technologies Corp. as plaintiffs. Plaintiffs Hall and Alien Technologies later moved, however, to substitute Norge Holdings LLC for Hall as a plaintiff. (Doc. 39). The then-assigned Judge granted that motion (Doc. 45), and the current Plaintiffs, Alien Technologies and Norge, filed an Amended Complaint (Doc. 46) sans Hall.

[2] Alien Technologies makes clear in the motion to compel that the requested relief is directed only at Lynx Precision Products, even though John D. Cullinan is also a defendant in this action. That is, Alien Technologies references only Lynx in the motion, memorandum in support of the motion, and proposed order attached to the motion. (Doc. 61, #1394; Doc. 61-1, #1396–97; Doc. 61-11, #1501). Admittedly, one sentence in Alien Technologies' reply implies the motion to compel is directed at both defendants. (Doc. 69, #3606 ("But Defendants should now be ordered to supplement their RFA answers with admissions or denials *without any further delay* so expert discovery could be focused and streamlined.")). But this belated reference to both Defendants is too little too late. *See Barany-Snyder v. Weiner*, 539 F.3d 327, 331–32 (6th Cir. 2008). And because Alien Technologies knew both Lynx and Cullinan have participated in this discovery process, (Doc. 61-6), the specificity of its requested relief against only Lynx in the motion to compel is inconsistent with its demand for broader relief in its reply, thereby impliedly waiving such a broader claim for relief. *See Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 469–70, 469 n.15 (9th Cir. 2023).

9,643,823 (the '823 Patent)—are present in the accused infringing device. (Doc. 61-3). Lynx objected to the requests (Doc. 61-4), so Alien Technologies has moved to compel as a result.

The Court concludes that, while Alien Technologies is entitled to pretrial notice of Lynx's non-infringement contentions and the evidence that Lynx intends to use in support of those contentions, the better mechanisms to obtain that information are (1) responses to the contention interrogatories that Alien Technologies previously tendered, coupled with (2) expert discovery, including expert depositions. True, it appears that Lynx's responses to the contention interrogatories to date may be deficient in that regard. But the appropriate avenue for addressing those potential shortcomings would be to require Lynx to supplement those responses.

By contrast, there are two potential problems with using RFAs under Rule 36 to explore non-infringement contentions. First, non-infringement contentions often require explanations that do not lend themselves to the typical admit-or-deny format applicable to RFAs. Second, using RFAs in that manner has the potential to turn legitimate disputes between the parties about core issues in the case into a basis for post-trial motions to recover the litigation costs incurred in presenting those issues at trial. *See* Fed. R. Civ. P. 37. Accordingly, while the Court agrees that Alien Technologies is entitled to a full account of the claim limitations that Lynx contends are not present in the accused infringing device, the Court declines to compel responses to the RFAs here. Thus, the Court **DENIES** the Motion (Doc. 61), but **ORDERS** Lynx to supplement its response to Alien Technologies' Interrogatory No.

8, (Doc. 61-5, #1465), within twenty-one (21) days of this Order and to identify any additional claim limitations from Claim 1 of the '823 Patent that it asserts are missing from the accused device, coupled with explanations why that is so.

## BACKGROUND

Alien Technologies asserts that Lynx's RollnJack product infringes Claim 1 of the '823 Patent. Claim 1 generally claims "[a]n apparatus for removing, storing, and installing hardtop devices from automobiles comprising" certain attributes. (*See* Doc. 1-1, #47).[3] For example, the first claim limitation is "a movable base unit which is sufficiently long and wide to support the apparatus from longitudinal and axial moments with and without the hardtop [i]nstalled." (*Id.*). On April 11, 2023, the then-assigned judge entered a claim construction order construing various aspects of the claim language. (Op., Doc. 53).

Shortly thereafter, Alien Technologies served Lynx with a set of forty-nine RFAs. (See Doc. 61-3). The RFAs seek to parse with care the claim language to obtain admissions regarding which particular limitations (or portions of limitations) Lynx concedes are present in the accused infringing device. The Court will illustrate this by reference to the five RFAs directed at the claim limitation referenced above:

   2.   The Accused Product includes a movable base unit.

---

[3] On December 20, 2022, Plaintiffs filed an amended complaint, (Doc. 46), which means that the original complaint is no longer operative. The amended complaint attaches the patent-in-suit. (Doc. 46-1). Unfortunately, Plaintiffs elected to refile with the amended complaint *a copy* of the patent previously filed with the original complaint that had an ECF header. As a result, the ECF header on the patent attached to the amended complaint, which printed over the original ECF header, is illegible. So, for the convenience of the reader, the Court cites to the patent attached to the original complaint to make the PageID references usable.

3

    3.    The Accused Product includes a movable base unit which is sufficiently long and wide to support the Accused Product.

    4.    The Accused Product includes a movable base unit which is sufficiently long and wide to support the Accused Product from longitudinal and axial moments.

    5.    The Accused Product includes a movable base unit which is sufficiently long and wide to support the Accused Product from longitudinal and axial moments with the hardtop installed.

    6.    The Accused Product includes a movable base unit which is sufficiently long and wide to support the Accused Product from longitudinal and axial moments without the hardtop installed.

(Doc. 61-3, #1411). The remaining RFAs seek similar information regarding other claim limitations.

Lynx responded by objecting to each RFA with the same blanket objection. (Doc. 61-4). Specifically, Lynx argued the RFAs were not proper because (1) "Accused Product" is not defined, (2) the RFAs seek admissions to conclusions of law, (3) they seek admissions of facts "obviously in dispute," (4) they require Lynx to "presuppose a conclusion of fact properly left for" the jury, (5) they seek admissions of "crucial facts in dispute," (6) they subvert the purpose of Rule 36 by seeking admissions on highly contested factual issues, (7) they are an abuse of discovery as they ask Lynx to admit what has already been denied in a responsive pleading, (8) they ask Lynx to concede the invalidity of its position, and (9) they are "designed to preclude presentation of the merits of a case" and thus "violate[] Lynx's due process rights." (*See, e.g., id.* at #1419–20).

Alien Technologies then moved to compel responses to the RFAs. (Doc. 61). Lynx opposed. (Doc. 62). And Alien Technologies replied. (Doc. 69).

4

In the course of that briefing, Alien Technologies also noted it had tendered a set of interrogatories. (Doc. 61, #1400). These included Interrogatory No. 8, which asked Lynx to "describe in detail all factual and legal bases for Defendants' contention that they do not infringe, including, but not limited to, a chart identifying where each limitation of each Asserted Claim is missing from each of the Accused Products," and as to each such missing limitation, requested an explanation why that limitation was not present either literally or under the doctrine of equivalents. (Doc. 61-5, #1465). It seems Lynx originally declined to provide that information. (*Id.* at #1465–66). But more recently, Lynx supplemented its response to assert that "the RollnJack device does not meet at least the limitations of subparagraphs b, c, and d" of Claim 1 of the '823 Patent and then to provide a fairly detailed explanation as to why it contends that is so regarding each of the identified limitations. (Doc. 69, #3613–3618).

In any event, the motion to compel is now ripe.

## ANALYSIS

"The purpose of our modern discovery procedure is to narrow the issues, to eliminate surprise, and to achieve substantial justice." *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 143 (8th Cir. 1968); *see also Ginns v. Towle*, 361 F.2d 798, 801 (2d Cir. 1966) ("The basic purpose of the federal rules, particularly those concerning discovery and disclosure, is to eliminate trial by ambush."). Or as the Sixth Circuit has observed, the rules are designed to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Brown Badgett, Inc. v. Jennings*, 842 F.2d 899, 902 (6th Cir. 1988)

5

(quoting *United States v. Proctor & Gamble Co.,* 356 U.S. 677, 682 (1958)). By so doing, the rules "eliminate the 'sporting theory of justice.'" *Id.* (quoting *In re Halkin,* 598 F.2d 176, 192 n.38 (D.C. Cir. 1979)); *see also* 8 Wright & Miller, Federal Practice and Procedure § 2001, at 17–19 (1970).

To that end, the civil rules make a variety of discovery tools available—for example, interrogatories, document requests, depositions, expert disclosures, and requests for admission. While these tools can often be used with overlapping effect, the principal roles they play in litigation differ somewhat. And the Federal Rules empower the Court to ensure that parties are using the form of discovery best suited to the task at hand. Or, more accurately, the Court can "limit the … extent of discovery … if it determines that … the discovery sought … can be obtained from some other source that it more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

The question before the Court here principally involves requests for admission. Federal Rule of Civil Procedure 36 governs such requests. The rule allows a party to serve on any other party a written request "to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A). The failure to admit a fact later proven at trial has consequences. In particular, "the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof." Fed. R. Civ. P.

6

37(c)(2). Indeed, the court "must so order [such relief], unless" at least one of four listed conditions is met. *Id.*

The purpose of requests for admission "is to eliminate from the trial matters as to which there is no genuine dispute." *Superior Sales W., Inc. v. Gonzalez*, 335 F.R.D. 98, 105 (W.D. Tex. 2020) (citation omitted). "Therefore, requests for admissions are not principally discovery devices." *Id.* (citation omitted). That is to say, they are not meant as tools to explore the contours of the opposing party's position, so much as tools to confirm that a particular fact (e.g., the identity of the person listed as the inventor on a patent) is not in dispute. Moreover, "[w]here requests for admission … are duplicative of other discovery taken in the case, the requests do not serve the purpose of Rule 36(a) and are properly subject to objection." *Asarco LLC v. Union Pac. R.R. Co.*, No. 2:12-cv-283, 2016 WL 1755241, at *12 (D. Idaho May 2, 2016) (quoting *Caruso v. Coleman Co.*, No. 93-cv-6733, 1995 WL 347003, at *2 (E.D. Pa. June 7, 1995)) (cleaned up).

And relatedly, "Rule 36 is primarily a time-saving device." *Kaplan v. Mayo Clinic*, Civ. No. 07-3630, 2008 WL 11327401, at *4 (D. Minn. Nov. 7, 2008) (finding in a medical malpractice case that a set of RFAs aimed at obtaining admissions related to facts within the province of expert opinions could not act as a substitute for expert discovery). Where RFAs are directed at "complex [] issues beyond the ken of the average layperson" legitimate questions can be asked as to whether, for example, expert discovery, rather than RFAs, may be better suited to exploring the topic. *Id.* (citation omitted). And those concerns may take on special significance where

7

explanations regarding the issues in question would "almost invariably occupy multiple pages of [a deposition] transcript." *Id*.

With those thoughts in mind, the Court considers whether Alien Technologies' RFAs here will narrow the issues for trial and save time, or whether the parties would be better served by use of other discovery mechanisms to exchange the requested information. As noted above, the RFAs painstakingly parse the claim language in an effort to identify exactly what aspects of the claim language are at issue on the infringement question. While responses to those RFAs could perhaps narrow the issues for trial, the endeavor strikes the Court as more of a *discovery* inquiry, rather than a *confirmation* inquiry. *Superior Sales*, 335 F.R.D. at 105 ("[R]equests for admissions are not principally discovery devices." (citation omitted)). Moreover, the question of infringement is a centrally disputed issue in this case. Not only that, but Alien Technologies has explored that issue through a single interrogatory designed, so far as the Court can tell, to elicit almost exactly the same information that it seeks to obtain through the collection of Lynx's responses to the 49 RFAs, thus rendering the RFAs at least potentially duplicative of that interrogatory. *See Asarco*, 2016 WL 1755241, at *12. And, as Lynx's tendered response to that interrogatory reveals, (Doc. 69, #3613–18), noninfringement is a "complex issue" on which Lynx intends to offer expert testimony and is one that naturally lends itself to narrative responses, such as those tendered in interrogatory responses, expert disclosures, or expert depositions, rather than the standard admit or deny response usually given to RFAs.

8

In sum, the Court concludes that Alien Technologies is entitled to advance notice of Lynx's noninfringement contentions and a detailed explanation of them. But the Court finds that the RFAs that Alien Technologies tendered are not the most efficient way of ascertaining that information. And, as noted above, the Court is concerned that using them in the way Alien Technologies seeks to do here could risk prompting ancillary disputes down the road about sanctions under Rule 37, should Alien Technologies prevail at trial. While such sanctions may be warranted where a party fails to admit something as basic as the authenticity of a document, the Court hesitates to open the door to the use of RFAs as a fee-shifting mechanism for core disputed issues in a case.

Accordingly, the Court denies Alien Technologies' Motion to Compel (Doc. 61). That said, having reviewed the interrogatory response that Lynx tendered on the noninfringement issue, the Court agrees with Alien Technologies that Lynx has not fully disclosed its arguments on that front. In particular, Lynx's statement that it contends that "at least" certain identified limitations are missing from the accused device appears to leave open the possibility that Lynx is asserting that other, as yet unidentified limitations, are also absent. (Doc. 69, #3613). Accordingly, while the Court denies the Motion to Compel, and thus declines to require Lynx to respond further to the RFAs, the Court sua sponte orders Lynx to supplement its response to Alien Technologies' Interrogatory No. 8 to identify any additional limitation that it contends is not met by the accused device and to explain the basis for that contention. Of course, if additional information should come to light, Lynx is free to supplement

9

that response even further. But should that occur, Lynx will also be required to explain why that information was not available to it earlier.

To be clear, none of the Court's analysis regarding this specific set of RFAs is meant to suggest that RFAs can never be utilized as a means to establish facts related to infringement or noninfringement issues. Rather, the point is merely that, considering the issues that Alien Technologies seeks to explore through its proposed RFAs here, other discovery devices are more efficient and certainly more effective.

## CONCLUSION

For the above reasons, the Court **DENIES** Alien Technologies' Motion to Compel (Doc. 61) but **ORDERS** Lynx to supplement its response to Interrogatory No. 8 consistent with this Order. The supplemental response is due within twenty-one (21) days of the date of this Order.

**SO ORDERED.**

October 31, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**