# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**FREDERICK HALL, *et al*.,**

      **Plaintiffs,**

         **Case No. 1:20-cv-918**

    **v.**

         **JUDGE DOUGLAS R. COLE**

**JOHN D. CULLINAN, *et al*.,**

      **Defendants.**

## OPINION AND ORDER

Before the Court is the latest salvo in this trade secrets (also formerly patent infringement) suit about a niche product—a rolling one-legged Jeep hardtop removal device that one person can operate. Plaintiffs Alien Technologies Corp. and Norge Holdings, LLC, (collectively, Alien Technologies)[1] claim that, despite this Court's order preliminarily enjoining Defendants John D. Cullinan and Lynx Precision Products Corporation (collectively, Lynx) from directly or indirectly advertising, manufacturing, selling, or distributing its RollnJack product within the United States, (Doc. 81), Lynx has done just that. And seeking to capitalize further on the preliminary injunction win from last fall, Alien Technologies also moved to expand the scope of the injunction internationally.

---

[1] The original Complaint listed Frederick Hall and Alien Technologies Corp. as plaintiffs. Plaintiffs Hall and Alien Technologies later moved, however, to substitute Norge Holdings, LLC, for Hall as a plaintiff. (Doc. 39). The Court (the matter was then assigned to another Judge) granted that motion, (Doc. 45), and Plaintiffs, now Alien Technologies and Norge, then filed an Amended Complaint sans Hall, (Doc. 46).

As further explained below, the Court finds that Alien Technologies has failed to demonstrate its entitlement to relief on either front. So the Court **DENIES** Plaintiffs' Motion to Enforce the Preliminary Injunction, for a Show Cause Hearing and Award of Attorneys' Fees, and to Expand the Preliminary Injunction to Foreign Sales (Doc. 83).

## BACKGROUND

The story begins with a patent owned by Frederick Hall, originally a plaintiff in this lawsuit. The patent generally disclosed a device enabling a single person to remove and to replace the convertible hardtop on a Jeep vehicle. (Cl. Constr. Op. & Order, Doc. 53, #1348). To bring a product based on this patent to market, Alien Technologies (a company which is the exclusive licensee of the patent and has Hall as its President) engaged Lynx, and its President and founder Cullinan. (Doc. 66-21 ¶¶ 1–3, 6–7, #1880–81). They were to manufacture Alien Technologies' TOPLIFT PRO product for sale in the United States. (*Id.* ¶¶ 6–7, 13, #1881, 1884; Doc. 70-2, #4027–28; Doc. 79, #4280). The parties executed a February 6, 2018, "Confidentiality Agreement" that governed their relationship. (Doc. 66-23, #1910–13). That agreement barred both Alien Technologies and Lynx, along with any employees or agents of either company, from disclosing nonpublic information outside the confines of the parties' business relationship. (*Id.*; Doc. 77, #4199). With that agreement in place, Lynx began manufacturing the TOPLIFT PRO, which was a two-legged Jeep hardtop removal tool. (Doc. 66-21 ¶ 11, #1883). Alien Technologies sold that product in the United States. (*Id.* ¶ 13, #1884).

Against that backdrop, this lawsuit arose from events that began with a meeting between the parties on December 6, 2018. (Op. & Order, Doc. 81, #4679–81). Based on the evidence adduced at the preliminary injunction hearing, it appears that, notwithstanding the Confidentiality Agreement, Defendants misappropriated confidential information they learned that day. (*Id.*) Specifically, the Court concluded (for preliminary injunction purposes) that, at that meeting, Hall and Cullinan discussed a sketch Hall had drawn "purporting to depict a one-leg removal tool" (as opposed to the two-legged TOPLIFT PRO then in production). (*Id.* at #4680). Plaintiffs further provided evidence suggesting that Cullinan used that drawing to fabricate the RollnJack product that Lynx began selling in late 2019—in apparent violation of the Confidentiality Agreement. (*Id.* at #4680–83). Lynx's production and sale of the competing RollnJack product prompted Alien Technologies' suit against Lynx in November 2020, in which it raised patent infringement, trade secrets, and breach of contract (or, in the alternative, unjust enrichment) claims.[2] (Compl., Doc. 1; Am. Compl., Doc. 46, #1126–39).

Nearly three years into the suit, Alien Technologies moved for a preliminary injunction against Lynx's continued production and sale of the RollnJack in the United States. (Doc. 66). After a two-day hearing, the Court issued its September 29, 2023, Opinion and Order granting Alien Technologies' request and preliminarily enjoining Defendants "from directly or indirectly advertising, manufacturing, selling, or distributing [their] RollnJack product within the United States." (Doc. 81, #4697).

---

[2] By a stipulated agreement of dismissal, all the patent-related claims have been dismissed from this dispute. (Doc. 90; 1/18/24 Min. Entry).

3

The Court concluded Alien Technologies had shown a likelihood of success on its trade secrets claim (and this ground alone) by proffering the above-referenced evidence tending to prove Cullinan had misappropriated the confidential drawing he observed at the December 6, 2018, meeting to produce Lynx's RollnJack product, which was eerily similar to Hall's sketch. (*Id.* at #4677–87, 4694 n.14).

What happened next is the source of the current dispute and motion. First, Alien Technologies (acting via Hall) immediately purchased two RollnJack products on Amazon—one on September 30, 2023 (sold by Lynx), and one on October 1, 2023 (sold by Amazon Warehouse). (Doc. 83-10, #4858–60). Both were delivered. (*Id.* at #4861–62). Alien Technologies claims these post-September 29, 2023, sales violate the injunction, especially because Lynx has not requested that the units be returned. (Doc. 83, #4712).

Alien Technologies separately objects that Lynx violated the preliminary injunction by advertising the product. (*Id.* at #4706). It takes issue with four alleged violations: (1) an FAQ page on the RollnJack website explaining how to use the RollnJack product; (2) an internet-accessible assembly manual instructing purchasers how to assemble their products; (3) web testimonials and reviews of the RollnJack product; and (4) the display of "images, videos, and customer reviews" of the RollnJack on social media platforms.[3] (*Id.* at #4706–12).

---

[3] Lynx's current counsel notes that until the Court rules on the outstanding motion, it has "elected to take a conservative approach and [has] removed such content" as the Assembly Manual, FAQ page, informational videos informing consumers how to use their products, and images of the product hosted on Lynx's social media pages. (Doc. 91, #4997–98).

Because Alien Technologies believed that these actions violated the Court's injunction, and having not made progress on the actions it believed Lynx should have taken in response to its informal communications, Alien Technologies moved for relief on October 27, 2023. (*Id.* at #4701–02). In its motion, Alien Technologies demands that the Court (1) find that the alleged violations are in fact violations of the preliminary injunction; (2) order return of all products sold after September 29, 2023; (3) order Lynx to show cause why sanctions are not appropriate; (4) award costs and fees to Alien Technologies; and (5) expand the scope of the injunction, based on speculation about increased foreign sales. (*Id.* at #4702).

On November 2, 2023, the Court met with the parties to discuss the motion and set a partially expedited briefing schedule for the motion. (11/2/23 Min. Entry). Lynx responded in opposition on November 10, 2023, arguing that it had complied with the injunction and requesting clarification from the Court on the scope of the term "advertising" as used in the injunction. (Doc. 85, #4966). Alien Technologies filed a reply soon after. (Doc. 87).

But less than a week after filing the response, Lynx's former counsel moved to withdraw, (Doc. 86), which motion the Court granted on November 21, 2023. (11/21/23 Not. Order). In connection with that motion, the Court stayed all proceedings for thirty days to permit Lynx to obtain new counsel. (*Id.*). After Lynx's new counsel filed appearances, the Court held a status conference on January 18, 2024. There, the Court ascertained the remaining discovery to be conducted in the case and granted new counsel an opportunity to supplement Lynx's response to Alien Technologies'

outstanding motion. (1/18/24 Min. Entry). Lynx did so, (Doc. 91), and Alien Technologies thereafter filed a supplemental reply, (Doc. 92). The matter is now ripe.

## LAW AND ANALYSIS

As a reminder, on September 29, 2023, the Court preliminarily enjoined "Defendants from directly or indirectly advertising, manufacturing, selling, or distributing its RollnJack product within the United States." (Doc. 81, #4697). Alien Technologies' motion raises two questions: whether to expand the scope of the preliminary injunction and whether Lynx should be held in contempt for violating the preliminary injunction as entered on September 29, 2023. (Doc. 83, #4702). The Court will analyze each in turn. And when discussing the alleged violations of the injunction, it will also address Lynx's request that the Court modify the scope of the Order. (Doc. 85, #4966–67; Doc. 91, #5000–02).

## A. Should the Court Expand the Preliminary Injunction Internationally?

As written, the September 29, 2023, Preliminary Injunction Order (PI Order) limits Lynx only with respect to actions it takes *domestically* regarding the RollnJack. Alien Technologies wants more—seeking to enjoin Lynx's RollnJack business on foreign shores as well.

A request to expand the scope of a preliminary injunction requires the Court to consider the same four factors governing the entry of the injunction in the first place: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the [expansion]; (3) whether [an expansion] of the injunction would cause substantial harm to others;

and (4) whether the public interest would be served by [its] issuance." *Student Res. Ctr. v. E. Gateway Cmty. Coll.*, No. 2:22-cv-2653, 2022 WL 5177785, at *3 (S.D. Ohio Aug. 23, 2022) (quoting *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 590–91 (6th Cir. 2012)). Alien Technologies has made no showing on any of these prongs. Instead of evidence, it resorts to speculation that "Defendants will most likely ramp up their marketing and sales in other countries," (Doc. 83, #4714–15), and complains that Lynx has not explained why the Court should not enjoin Lynx's actions abroad, (Doc. 87, #4980; *see* Doc. 92, #5037). Contrary to Alien Technologies' conclusory assertion that it has made the requisite showing—solely by citing examples of other courts' entries of international injunctions protecting trade secrets based on the evidentiary showings in those cases (Doc. 83, #4715)—argument and speculation are no substitute for actual evidence. Furthermore, Alien Technologies bears the (heavy) burden of proving entitlement to the preliminary injunctive relief it requests. *Cavalier Distrib. Co. v. Lime Ventures, Inc.*, 660 F. Supp. 3d 700, 705 (S.D. Ohio 2023). Alien Technologies needed to proffer evidence in the first instance and has not done so. Absent such evidence, Lynx need not show why an expansion of the injunction is not warranted. Accordingly, the Court declines to expand its previous PI Order as Alien Technologies requests.

## B.    Alleged Violations of the Preliminary Injunction

That leaves Alien Technologies' complaints about Lynx's conduct under the current injunction. Though styled as a motion to enforce that injunction, Alien Technologies' motion is really a petition to hold Lynx in civil contempt. *Cernelle v.*

*Graminex, LLC*, 437 F. Supp. 3d 574, 600 (E.D. Mich. 2020) ("A party may seek to enforce an injunction through a contempt petition."), *amended in part on other grounds on reconsideration*, 539 F. Supp. 3d 728 (E.D. Mich. 2021). To provide a basis for holding Lynx in civil contempt, Alien Technologies, as the movant, must first show that the order violated was "definite and specific" in its "requiring [Lynx] to perform or [to] refrain from performing a particular act or acts." *Rolex Watch USA, Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (citation omitted). And then it must prove by clear and convincing evidence that Lynx violated the Court's prior order with knowledge of the order itself. *Elec. Workers Pension Trust Fund of Loc. Union 58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003). But because any contempt being considered is "civil and [therefore] remedial in nature, [Lynx's] intent … is irrelevant to the validity of [a] contempt finding." *In re Jaques*, 761 F.2d 302, 306 (6th Cir. 1985). A contemnor may defend against a prima facie showing of its violating the Court's order by "show[ing] categorically and in detail why he … [wa]s unable to comply with the court's order" and that he "took all reasonable steps within his power to comply with the court's order." *Gary's Elec. Serv.*, 340 F.3d at 379 (cleaned up); *see United States v. Loc. 1804-1, Int'l Longshoremen's Ass'n*, 44 F.3d 1091, 1096 (2d Cir. 1995) (explaining that contempt will not lie if the contemnor was "reasonably diligent in attempting to comply").

As noted, Alien Technologies identifies five alleged violations. (Doc. 83, #4706–12). They fall into two camps: a purported violation of the prohibition on selling the RollnJack itself, (*id.* at #4712), and four alleged violations of the prohibition on

advertising the RollnJack, (*id.* at #4706–11 (listing the FAQ page, assembly manual, reviews and testimonials, and videos and images of the RollnJack product across social media sites)). This grouping is helpful because Lynx's opposition brief argues that the term "advertising" needs clarification, (Doc. 85, #4966–67; Doc. 91, #5000–02), which, if meritorious, would undercut the strength of Alien Technologies' arguments for holding Lynx in contempt for violating the preliminary injunction's prohibition on advertising. *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir. 1996) (Courts are "to read court decrees to mean rather precisely what they say, and ambiguities must be resolved in favor of persons charged with contempt." (cleaned up)). So the Court will handle the sales-related violation and then will turn to the advertising-related violations and resolve Lynx's request for clarification in the process.

### 1.    Allegedly Violative Sales

As noted, Alien Technologies complains about two sales of RollnJack products that Hall purchased immediately following the Court's entry of the preliminary injunction—one from Lynx directly, and the other from Amazon Warehouse. (Doc. 83, #4712; Doc. 83-10, #4859–60). Lynx acknowledges those sales of the RollnJack and candidly reports that after the entry of the injunction five units were sold over the weekend of September 30, 2023, and October 1, 2023. (Doc. 85, #4969). But it proffers details about the situation it argues constitute mitigating circumstances.

First, Lynx notes that one of Hall's purchases did not in fact come from Lynx, but rather a third-party entity, Amazon Warehouse, which Lynx does not directly or

indirectly control. (Doc. 91, #4994; Doc. 91-1 ¶ 16, #5007). Next, Lynx highlights that it "has not made a single sale of the RollnJack Lift in the United States since the first business day following" the entry of the preliminary injunction. (Doc. 91, #4994). And third, Lynx explains that its failure to stop sales immediately arose from the combination of former counsel's presence in the United States, Defendants' presence in Thailand (a fourteen-hour difference from counsel's time zone in the United States), the fact that the Court's injunction was entered at 4:32 pm Eastern Daylight Time on a Friday afternoon, and the fact that Lynx's third-party distributors and vendors were located in different time zones or not working that weekend. (Doc. 91, #4990–91; Doc. 91-1 ¶¶ 5–8, 10, #5006–07).

The Court finds that Lynx has more than met its burden of production to show that it took reasonable steps to comply with the Court's preliminary injunction. Lynx's proffer of Cullinan's sworn declaration identifies concrete steps taken promptly following the entry of the injunction (accounting for time changes) to comply. It does not strike the Court as odd that Lynx's counsel would not have been in contact with Lynx until the morning of Saturday, September 30, 2023, given the fourteen-hour time difference between Cincinnati and Thailand. Nor does it strike the Court as unusual that it took a day for Lynx to contact its vendors and distributors across the world to stop further sales of the RollnJack across the various platforms where it was sold. Distribution networks are more like a moving train than water flowing from an open tap. While a simple twist of the spigot can turn off the water at the drop of a hat, a well-functioning distribution network has several moving

parts and multiple players, many or all of whom must be contacted before sales grind to a halt a mile or so down the track. So while the sales after the Court's entry of the preliminary injunction technically violated the PI Order, they do not constitute a basis for holding Lynx in contempt. Working over the weekend across several time zones to end sales within 48 hours of docketing the PI Order strikes the Court as taking all reasonable steps to comply with it.

Alien Technologies objects by (1) referring to the Court's credibility findings that specifically relate to Cullinan's preliminary injunction testimony about the December 6, 2018, meeting and Hall's sketch of a product eerily similar to Lynx's subsequently-introduced RollnJack; (2) proclaiming that the sale of five RollnJacks within 48 hours of the PI Order necessarily reveals a failure to take all reasonable steps; and (3) implying that the difference in prices between the two products Hall snap purchased the same weekend is indicative of a nefarious plot to violate the PI Order. (Doc. 83, #4712; Doc. 92, #5033–34, 5036). None of the arguments are very persuasive.

Start with Cullinan's credibility. First, the Court acknowledges that it found Cullinan's testimony about the December 6, 2018, meeting less credible than Hall's account. (Doc. 81, #4684–85). But the Court is unclear why that finding necessarily and automatically requires it to discount wholesale a later-provided sworn declaration speaking to a different factual scenario. Indeed, the old common-law maxim on credibility determinations, *falsus in uno, falsus in omnibus*—false in one, false in all—has always been treated "not [as] an inflexible rule of evidence … [but]

one of permission." *Norfolk & W. Ry. Co. v. McKenzie*, 116 F.2d 632, 635 (6th Cir. 1941); *accord United States v. Harries*, 26 F. Cas. 166, 168–69 (C.C.S.D. Ohio 1869) (No. 15,309). And without an explanation why the finding that Cullinan's story about the December 6, 2018, meeting was *less* credible than Hall's story (but not wholly incredible) should be extended to his sworn statements about events nearly five years later—to say nothing of Alien Technologies' abject failure to put forward competent evidence rebutting Cullinan's plausible narrative—the Court will credit Lynx's showing (through Hall's declaration) as to its diligence.

What about Alien Technologies' theory that the sale of five units after the injunction order necessarily means Lynx did not take all reasonable steps? That theory conflates two aspects of its required showing to hold Lynx civilly in contempt—the violation of the injunction and the contemnor's taking reasonable steps to comply. As is clear from the caselaw, "[t]he failure to meet the strict requirements of an order does not necessarily subject a party to a holding of contempt." *Dunn v. N.Y. State Dep't of Lab.*, 47 F.3d 485, 490 (2d Cir. 1995). And here, Lynx (via Cullinan) has explained how and why it acted expeditiously the weekend after the PI Order was entered to comply with its conditions. That a few sales occurred in violation of the injunction order, without more, is simply too thin a reed to bear a contempt finding.

And what about Alien Technologies' hypothesized nefarious story about Lynx's fire sale of RollnJacks to make a quick buck from existing inventory immediately following the PI Order? That theory folds like a house of cards upon even a cursory review of the evidence Lynx provided. The first sale, on September 30, 2023, was of a

12

*new* RollnJack from *Lynx*. (Doc. 83-10, #4859). The second sale, on October 1, 2023, was a *used* RollnJack from *Amazon Warehouse*. (*Id.* at #4860). Not only were there two distinct sellers, who are free to sell the same product for different prices,[4] but the products differed in an important respect—new versus used. Resale markets for used products generally have lower equilibrium price points as compared to primary markets, for a host of reasons. This self-evident reality wholly undercuts Alien Technologies' theory.

So the Court finds no legal basis for holding Lynx in civil contempt for the five units sold the weekend following the entry of the Court's PI Order.

### 2. Allegedly Violative Advertising

Next, turn to Alien Technologies' citation to Lynx's four alleged violations of the portion of the preliminary injunction that bars Lynx from "directly or indirectly advertising … its RollnJack product within the United States." (Doc. 81, #4697). In response, Lynx raises a preliminary issue. It suggests "the word 'advertising' is too vague" and that the injunction needs to be modified as a result. (Doc. 85, #4967; Doc. 91, #5001–02 (taking a more moderate approach in its supplemental briefing by contending that the order only "*arguably* should be clarified" (emphasis added))). Because the specificity requirement set out in Federal Rule of Civil Procedure 65(d) must be met before an injunction order can have force, the Court resolves this issue

---

[4] The Court would be shocked to learn that there are price controls imposed on the niche market for devices enabling individuals to remove the hardtop off Jeeps by themselves.

before turning to the alleged violations themselves. *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 362 (6th Cir. 2022).

Lynx is correct on the legal rule, but wrong on how it plays out here. Injunctions must be reasonably specific. That rule "prevent[s] uncertainty and confusion on the part of those faced with injunctive orders, and [] avoid[s] the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). The test is straightforward—can "an ordinary person reading the court's order … ascertain from the document itself exactly what conduct is proscribed"? *Union Home*, 31 F.4th at 362 (cleaned up).

That standard is easily met here. The complained-about aspect of the injunction prohibits Lynx from directly or indirectly advertising the RollnJack product. An "ordinary person" would understand that to mean that Lynx must not produce materials for public consumption promoting the sale of the RollnJack product, whether the production occurs in house ("directly") or via an intermediary ("indirectly"). This self-evident conclusion is confirmed by reviewing dictionary definitions of the word 'advertising': "to present (something or oneself) to the public in a way that is intended to attract customers." *Advertise*, Merriam-Webster Dictionary, https://perma.cc/6G8V-WQ62 (last visited Feb. 12, 2024); *accord Advertising*, Black's Law Dictionary (10th ed. 2014) ("The action of drawing the public's attention to something to promote its sale."); *Advertise*, Webster's II New Riverside University Dictionary (1988) ("To make public announcement of, esp[ecially] to proclaim the qualities or advantages of so as to increase sales <[as in

14

to] *advertise* a new product>."). Put simply, the definitions of the term 'advertising' are both clear and consistent. The reasonable lay reader would have no difficulty in determining what actions the Court proscribed.

And this means the Court's September 29, 2023, injunction order is unlike those orders vacated in the cases Lynx cites. In each, the order at issue used terms of art without a definition or relevant concrete details. *See Union Home*, 31 F.4th at 363–64 (concluding, inter alia, that "competing," which could cover a wide range of actions both legal and illegal depending on how the term is interpreted, rendered the injunction impermissibly vague); *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 912 F.3d 1054, 1057 (7th Cir. 2019) (explaining that "interfering" was an ambiguous term that does not reasonably specify what actions are permitted or prohibited); *EEOC v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 576 (6th Cir. 1984) (holding that "discriminating" was a term of art that rendered the injunction impermissibly vague because it effectively constituted an "obey the law" injunction); *Schine Chain Theatres v. United States*, 334 U.S. 110, 125–26 (1948) (finding an injunction impermissibly vague because of its use of the term "monopolizing," which is a legal term of art), *overruled on other grounds by Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984). In contrast, there is no specialized knowledge required to understand the word "advertising"—all have an intuitive sense of what that word means, as evidenced by the fact that Lynx has put forward cogent arguments explaining why the cited violations do not constitute advertising. (*See, e.g.*, Doc. 91, #4996–97 (arguing they do not "offer [the RollnJack]

15

for sale" or "solicit business")). Nor is there a risk of vagueness occasioned by prohibiting conduct at a thirty-thousand-foot level, *Total Quality Logistics, LLC v. Traffic Tech, Inc.*, Nos. 22-3148/3377, 2023 WL 1777387, at *5 (6th Cir. Feb. 6, 2023) (finding a broad-based prohibition on disclosing trade secrets lacked sufficient specificity)—the PI Order specifically states that advertising only of the RollnJack product is prohibited and that such advertising is prohibited only during the pendency of the suit. It is no wonder that the Sixth Circuit found no ambiguity problem with a comparably clear injunction that required a party "to withdraw 'all advertising in all media that bears the [allegedly infringing] logos.'" *Cf. CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 599 (6th Cir. 2015). So the Court declines to modify its clear and unambiguous PI Order.

Given the injunction order stands as written, that leaves whether Alien Technologies is correct that Lynx has violated the ban on advertising the RollnJack device. Before the Court turns to the specifics of the alleged violations, it briefly addresses a premise underlying Alien Technologies' arguments—that the Court's order prohibited all "direct and indirect advertising" of the RollnJack. (Doc. 83, #4702, 4704–05, 4707, 4709, 4710, 4715; Doc. 87, #4977–78; Doc. 92, #5034). Alien Technologies mistakenly reads "directly or indirectly" to limit what materials may be disseminated, rather than to modify the *actions* Lynx may not take. That leads Alien Technologies to presume Lynx violates the PI Order when it disseminates materials that directly or indirectly promote the quality and desirability of the RollnJack device in the eye of a potential consumer—regardless Lynx's purpose in printing those

materials. However, the PI Order forbids Lynx's actions only when they are designed to promote sales of the product (i.e., when Lynx is advertising), as opposed to seeking some other legitimate end. (This distinction is seen most clearly in the Court's rejection of Alien Technologies' arguments about Lynx's displaying the FAQ page and assembly manual on its website, *see infra* Section B.2.a.)[5] The words "directly or indirectly" merely prevent Lynx from advertising the RollnJack device via promotional material it disseminates itself (i.e., "directly") or by retaining a third party to act as its conduit to the public (i.e., "indirectly")—thereby implementing the enduring maxim that "[w]hat cannot be done directly cannot be done indirectly." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023) (quoting *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325 (1867)).

In short, under the PI Order, Lynx, whether acting directly or indirectly, may not advertise the RollnJack device. *But* the Order does not proscribe all activities that may indirectly plug the product. The Court now turns to the four alleged advertising violations (which are easily tackled given the scope of the injunction has been firmly established).

---

[5] Take an example not at issue here. Lynx's website currently is called "www.rollnjack.com" and contains its RollnJack mark, which is the logo on all Lynx's products—not just the disputed RollnJack device. *See RollnJack Jeep Hardtop Removal*, RollnJack (last visited Feb. 13, 2024), https://perma.cc/X826-98V6. A plain reading of the PI Order does not ban Lynx's use of its mark even though it may have the incidental effect of indirectly promoting the RollnJack device. Lynx has an independent, valid use for both—engaging in other business activities. And the independent, valid basis for using the mark means Lynx's display of the mark falls outside the injunction's ban on Lynx's indirectly advertising the RollnJack device.

### a.    FAQ Page and Assembly Manual

The first two alleged violations rise or (as they do here) fall together—the purportedly improper advertising of the RollnJack via an FAQ page explaining how the product works and an assembly manual explaining how those who bought the product are to put it together properly. (Doc. 83, #4706–09). While Alien Technologies insists that they are purely promotional materials, or at least materials that have the incidental effect of promoting the RollnJack product, the Court disagrees. The FAQ page explains in a digestible format how the product works and is assembled. (Doc. 83-5, #4789–95). The assembly manual does the same in instruction and pictorial form. (*Id.* at #4799–800). Both provide important details on how to use the product safely to customers *who have already purchased the product. See Marcyan v. Nissen Corp.*, 578 F. Supp. 485, 507 (N.D. Ind. 1982) ("This manual is not advertising material, nor is it distributed to the general public for the purpose of promoting plaintiffs' products: it is a user's manual and is provided to a purchaser of the defendants' equipment together with the equipment in order to describe its proper use."). Thus the primary purpose of these materials is not to occasion new sales—the hallmark of "advertising." Again, the PI Order does not cover all materials that someone, with enough time and creativity, could conceive of as indirectly promoting sales in some fashion. Rather, the PI Order enjoined only the material Lynx itself (directly) or through an intermediary (indirectly) employed for the primary goal of promoting RollnJack sales. A safety-related FAQ page and assembly manual are a far cry from promotional materials. Indeed, if the PI Order were to prohibit such materials, that would raise its own host of problems—including potentially exposing

18

Lynx to tort liability for failing to warn about the risks of using the RollnJack product. *See, e.g.*, *Austin v. Mitsubishi Elecs. Am., Inc.*, 966 F. Supp. 506, 510 (E.D. Mich. 1997) (concluding that defendant was not liable for a failure-to-warn claim in light of its provision of an owner's manual that provided warnings to plaintiffs about improper uses of their television set). The plain language of the PI Order does not reach so far.

Alien Technologies objects, but its argument struggles under further scrutiny. It highlights curated excerpts from the FAQ page and the assembly manual as the basis for its claims that Lynx is "unabashedly pitching the RollnJack to visitors" and that Lynx's "showcasing the manual on the[] website demonstrates the[] intent to persuade the public about the alleged virtues of the RollnJack." (Doc. 83, #4707, 4709; *see* Doc. 92, #5034 (arguing again that "the FAQs promote the purported consumer-friendly qualities of the RollnJack" and that an isolated image of the RollnJack "smack[s] of advertising")). But as already explained, the preliminary injunction bars "advertising" through an intermediary, not all documents that arguably have indirect, incidental, promotional benefit. The selected quotations Alien Technologies highlights only incidentally (at most) promote the product; the main purpose of the FAQ page (as is clear from a cursory review of the page itself), is to explain the safe assembly, use, and operation of the product to a consumer who has purchased the product—a reality that equally applies to the assembly manual.[6] (*See* Doc. 83-5,

---

[6] Considering those individuals who already own the RollnJack may reasonably require access to an owner's or assembly manual, Alien Technologies' alternate argument that "if [Lynx] [is] not offering to sell or selling the product at present … then there is no need to provide the full detailed assembly manual" on its website makes little sense. (Doc. 92, #5034). In fact, customers often toss the paper copy of product manuals and instead search the

#4789–95, 4799–800). So Alien Technologies fails to persuade that either the FAQ page or the assembly manual flouts the PI Order. Lynx may validly host them on its website.

### b.    Social Media Pages

Next turn to Alien Technologies' contention that Lynx's social media pages violate the Court's order. Alien Technologies states that "[t]he RollnJack homepage provides links to the RollnJack product on Facebook, Instagram, and YouTube"— links, which according to Alien Technologies, "when followed, show that [Lynx] persist[s] in maintaining the presence of the RollnJack product on social media, including by hosting numerous images, videos, and customer reviews of the enjoined product." (Doc. 83, #4710–11). While these allegations seemingly flirt with the line separating prohibited advertising of the RollnJack from other permissible behavior, the Court cannot assess in the abstract whether the postings in fact evidence forbidden advertising of the product. For all the Court knows, these posts are instructive and provide related safety information, thereby falling in the same, non-enjoined camp as the FAQ page and assembly manual. *See supra* Section B.2.a.

As "evidence" of the violations, Alien Technologies provides links to the landing page for each of Lynx's social media accounts and attaches screenshots of those landing pages. (Doc. 83, #4711; Docs. 83-16, 83-17, 83-18). As for the social media pages generally, "the Court declines to do its own independent review of the full

---

internet for a PDF copy when an issue arises (for example, if a part needs to be adjusted or a product needs to be reassembled after being moved in a disassembled format). Contrary to Alien Technologies' claim, it is a quite sensible business practice to host "the full detailed assembly manual" on a public website for use by existing customers.

[webpages] to hypothesize about what [] [Alien Technologies] deems objectionable—it is not for the Court to conjure up the relevant details to fabricate a claim for the plaintiff." *Washington v. City of Cincinnati*, No. 1:23-cv-230, 2024 WL 474403, at \*10 n.11 (S.D. Ohio Feb. 7, 2024) (citation omitted). What about Alien Technologies' screenshots attached as exhibits to its motion? Again, the problem with this showing is that other than generally referring the Court to the screenshots, Alien Technologies makes no effort to identify the specific violations of which it complains or to explain why those allegations satisfy the contempt standard laid out above.

The Court does note that there are a couple of images of the RollnJack device on the Facebook page. (Doc. 83-16, #4902). But other than that there was a post that displayed the product itself, there is insufficient context to assess the purpose for the image—whether to promote the product or to communicate how to use it. That falls short of Alien Technologies' obligation to present "clear and convincing" evidence that Lynx violated the PI Order. *Gary's Elec. Serv.*, 340 F.3d at 379.

Admittedly, there appears to be one displayed Instagram post that strikes the Court as an example of Lynx's use of a customer testimonial to promote the benefit of the RollnJack product and therefore is likely to have violated the Court's PI Order. (Doc. 83-17, #4909). But without Alien Technologies' specifically identifying this post (to say nothing of providing the full post and supplying its caption), the Court declines to conclude that a (partially cropped) thumbnail suffices to meet the "clear and convincing" evidence standard to justify civil contempt sanctions. Merely attaching exhibits and having the Court engage in the inquiry reserved for the complainant as

the party seeking civil contempt sanctions does not "place in the [Court] an abiding conviction that the truth of its factual contentions [is] highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (cleaned up) (explaining that the standard is met "only if the material [] offered instantly tilted the evidentiary scales in the affirmative when weighed against the [proffered contrary] evidence").

That leaves the screenshot of the RollnJack YouTube page. Most of the videos shown appear to demonstrate how the RollnJack operates and how to assemble the product, (*see* Doc. 83-18, #4912–13)—valid, non-promotional materials that do not defy the injunction order. The specific video to which Alien Technologies objects by name, "Jeep hardtop removal – RollnJack Easy Assembly – Less than 10 minutes," seems not to violate the injunction for that reason. (Doc. 83, #4711). The remaining videos visible in the screenshot have titles that do not clearly reveal if the video contains promotional material or instead explains how to assemble and to operate the device. (*E.g.*, Doc. 83-18, #4913 (showing a video entitled "RollnJack range of motion")). Though the Court might (but not necessarily would) be convinced by the preponderance of the evidence that those videos constitute violations of the PI Order, there is simply no showing, context, or explanation justifying why it should have "an abiding conviction" that it is "highly probable" that they are. *Colorado v. New Mexico*, 467 U.S. at 316 (citation omitted). And that means Alien Technologies cannot overcome the higher clear-and-convincing evidence hurdle required for sanctions here. A more thorough record with a more detailed explanation of specific, identifiable instances of alleged violations might have met the mark. But Alien Technologies has

not made that requisite showing for Lynx's social media pages to warrant a contempt finding.

### c.     Reviews and Testimonials

That brings the Court to the final alleged violation of the PI Order: Lynx's hosting of reviews and testimonials on its web page. (Doc. 83, #4709; Doc. 83-14, #4879–90). The Court agrees with Alien Technologies here. The cited examples of testimonials are all promotional as they extol the specific attributes of the RollnJack product and are used as a sales tactic that would convince a member of the public that the product is worth purchasing. That (finally) fits the definition of advertising. *Advertise*, Merriam-Webster Dictionary, *supra* ("[T]o present (something or oneself) to the public in a way that is intended to attract customers."). And while Lynx perfunctorily suggests that the reviews contain safety information, (Doc. 91, #4995–96, 4998), that is not a fair characterization of the purpose of displaying the reviews. Even though one or two customers provide suggestions about how others can use the product, the primary purpose in hosting these testimonials is to endorse the product and its ease of use. That is advertising.

True, the reviews and testimonials have since been taken down (apparently in early November). (Doc. 85, #4968–69; Doc. 91, #4998; Doc. 91-1 ¶ 33, #5010). But the several-weeks delay in Lynx's doing so cannot be described as its having taken all reasonable steps to comply with the PI Order. *See Ohio Midland, Inc. v. Proctor*, No. 2:05-cv-1097, 2013 WL 692984, at *5 (S.D. Ohio Feb. 26, 2013) (concluding that six weeks of inaction evinced a failure to take all reasonable steps to comply with the

court's order). And Lynx has proffered no explanation for this delay. So Lynx's hosting of testimonials and reviews extolling the benefits of the RollnJack constitute a valid basis for a contempt finding.

But that requires the Court to determine the appropriate remedy. The Court "ha[s] broad discretion to fashion an appropriate remedy for [a party's] contempt." *Williamson v. Recovery Ltd. P'shp*, 467 F. App'x 382, 396 (6th Cir. 2012). And as its remedial authority is equitable in nature, *Spallone v. United States*, 493 U.S. 265, 276 (1990), the Court must "weigh[] the harm caused by noncompliance and the probable effectiveness of any suggested sanction in bringing about the result desired," *Glover v. Johnson*, 199 F.3d 310, 312 (6th Cir. 1999) (cleaned up).

Alien Technologies lists a litany of proposed, broad-sweeping sanctions, including an enforcement order with a short compliance timeline and an award of fees. (Doc. 83, #4704–05). But the Court finds none of the listed sanctions are warranted, even though Lynx's temporary hosting of reviews and testimonials on its web page impermissibly violated the Court's PI Order. The harm caused by non-compliance—a web page with a listing of testimonials for a product that has not been sold since the weekend following the entry of the PI Order—is negligible. And there is little current need for any sanctions more drastic than an admonishment given Lynx has removed the testimonials and reviews. (Doc. 91, #4998). That is especially true given current counsel's apparent responsiveness and desire to take a conservative approach while this motion has been pending, which reflects Lynx's willingness to comply going forward, *see supra* note 3. *Banyan Licensing, Inc. v.*

*Orthosupport, Inc.*, No. 3:00-cv-7038, 2001 WL 1098067, at *1 (N.D. Ohio June 18, 2001) (noting that district courts should fashion remedies taking into consideration the "probable effect of alternative sanctions" (quoting *EEOC v. Loc. 28 of Sheet Metal Workers Int'l Ass'n*, 247 F.3d 333, 336 (2d Cir. 2001))).

So the Court puts Defendants Cullinan and Lynx on notice that displaying these reviews and testimonials plainly violated the preliminary injunction. And the Court admonishes them that it expects their behavior going forward strictly to comply with the PI Order's plain language, which enjoins them "from directly or indirectly advertising, manufacturing, selling, or distributing its RollnJack product within the United States." (Doc. 81, #4697).

\*   \*   \*

Altogether, the Court finds that only one of Alien Technologies' five listed alleged violations—Lynx's hosting of reviews and testimonials on its website—meets the proper clear-and-convincing evidence standard to support a contempt finding.[7] But even though that violation supports such a finding, the Court declines to impose sanctions beyond admonishing Lynx to read both the plain language of the PI Order

---

[7] Alien Technologies tries to smuggle five additional alleged violations (some moot; others still ongoing) into its supplemental reply brief. (Doc. 92, #5041). But as these issues were not raised in a separate motion and were also improperly raised for the first time in a reply brief, the Court declines to opine on the alleged violations raised. *SAT Tech., Inc. v. CECO Env't Corp.*, No. 1:18-cv-907, 2023 WL 6119934, at *3 n.7 (S.D. Ohio Sept. 19, 2023). That said, the Court instructs Lynx to review this Opinion and Order, to evaluate whether any of the raised issues do in fact cross the line and violate the PI Order, and to act accordingly to bring any violations (if there are any) into compliance with the PI Order.

and this Opinion and Order carefully and to ensure it is in strict compliance with the preliminary injunction from here on out.[8]

## CONCLUSION

As exhaustively detailed above, the Court has found that nearly all of Plaintiffs' Motion lacks merit—they have shown no entitlement to an expansion of the preliminary injunction and they have listed several alleged violations of the preliminary injunction that either do not violate the PI Order's plain language or that occurred in such close proximity to the entry of that Order that a reasonable person may not have yet been able to comply with its diktats. And the only violation that could support the entry of sanctions—the display of testimonials and reviews that advertise the RollnJack product—warrants only an admonishment that the Court expects Lynx's strict compliance with the plain language of the PI Order (and this Opinion and Order further elucidating its meaning).

Accordingly, beyond its admonishment, the Court **DENIES** Plaintiffs' Motion to Enforce the Preliminary Injunction, for a Show Cause Hearing and Award of Attorneys' Fees, and to Expand the Preliminary Injunction to Foreign Sales (Doc. 83).

---

[8] As a reminder, reasonable diligence (i.e., whether Lynx took all reasonable steps to ensure compliance with the Court's PI Order) is a valid defense to any alleged violations of the preliminary injunction. *Gary's Elec. Serv.*, 340 F.3d at 379; *see also supra* Part B.1. As a result, the Court cautions Alien Technologies to explore that issue before it decides to move again to enforce the preliminary injunction. Not every violation of the PI Order constitutes a basis for a contempt finding, let alone sanctions. And it is a poor use of scarce judicial resources to resolve motions about alleged violations of the injunction order that caused little, if any, actual harm, and that occurred before the ink on the Court's orders has even dried. "As the undersigned has made clear during all telephone conferences with the parties and as is the policy of this Court across the board, it will best serve everyone for the parties to engage with each other in good faith going forward." *Hearn v. Dick's Sporting Goods, Inc.*, No. 1:22-cv-329, 2023 WL 7298616, at *5 n.4 (S.D. Ohio Nov. 6, 2023) (cleaned up).

**SO ORDERED.**

February 23, 2024
_____
**DATE**

_____
**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**